UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL BENSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:10-CV-519 |
| | § | |
| CITY OF TEXAS CITY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

The "port-o-potty," ubiquitous at construction sites and outdoor gatherings, plays a central role in this employment dispute. Texas City says it terminated longtime employee Michael Benson in 2009 because he was charged with stealing a port-o-potty from the City. Benson disagrees, alleging in this lawsuit that racial discrimination motivated his firing. As is typical in discrimination cases in which the employer cites disciplinary history as the basis for the challenged employment action, Benson's ability to demonstrate a fact issue of discrimination turns on whether he can do so circumstantially by showing that employees with similar violations were treated more favorably. Finding that Benson has not identified such individuals, the Court **GRANTS** Defendant Texas City's Motion for Summary Judgment.

I.  **BACKGROUND**

Benson worked for Texas City as a laborer in the Utilities Department from 1995 until his termination in 2009.  The port-o-potty at issue was rented by the City for use at the Kohfeldt Riding Arena, a local park where citizens can ride their horses.  In September 2009, the port-o-potty was found at another location in Texas City, on a privately-owned vacant lot leased to Benson, who used the property for family gatherings and cookouts.  After a Texas City community development director issued a report detailing code violations on the lot, Officer Derrick Grandstaff investigated and found the City's port-o-potty, among other violations.  According to the investigation, Benson kept the port-o-potty at the lot he rented and put a lock on it, but the City never authorized his use of it.  As a result of his investigation, Officer Grandstaff charged Benson with misdemeanor theft and nuisance.  Both charges were later dismissed; the theft charge was dismissed for lack of jurisdiction and the nuisance charge was dismissed because Benson did not receive proper notice of the violation.

But the discovery of the port-o-potty had more lasting consequences for Benson's employment status.  Both Benson's immediate supervisor, Todd Hoover, and Hoover's supervisor, Thomas Kessler, recommended Benson be terminated for violating City Personnel Policy section 4.06, which provides that improper or unauthorized use of City property may result in disciplinary action as the City

deems appropriate. Mayor Matthew Doyle made the ultimate decision to terminate, and cites the supervisors' recommendations, the findings of the port-o-potty investigation, and Benson's disciplinary record as his reasons. *See* Docket Entry No. 31-5 at 5–6.

Benson appealed his termination by filing a grievance with the City. After the City denied Benson's appeal, this suit followed. Benson asserts causes of action under 42 U.S.C. sections 1981 and 1983. Texas City seeks summary judgment on both claims. It argues that section 1981 does not provide a cause of action against local governments. It defends the section 1983 claim by arguing (1) that Benson has not identified the unconstitutional custom, policy or practice of discrimination that is required to hold a local government liable for any constitutional violations under that statute; and (2) that, regardless, Benson has not established an underlying case of discrimination.

## II. STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions

of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III. ANALYSIS

### A. Claims Under Section 1981

The Supreme Court has held that section 1981 does not provide a cause of action against a local government entity. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989). This holding remains good law in the Fifth Circuit, even after the the Civil Rights Act of 1991 amended section 1981. *See Oden v. Oktibbeha County*, 246 F.3d 458, 463–64 (5th Cir. 2001). Benson concedes that "the circuits have generally taken the position that *Jett* remains good law," but brings this claim to preserve his disagreement with circuit law. Docket Entry No. 38 at 18. Accordingly, Fifth Circuit precedent requires dismissal of Benson's section 1981 claim against Texas City. *See Oden*, 246 F.3d at 463–64.

### B. Claims Under Section 1983

In contrast, a section 1983 claim can be brought against a local government, but only when an "official policy" or "custom" of the entity caused the deprivation of rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Texas City argues that Benson has failed to plead and cannot prove an official policy or custom attributable to the City's policymaker. The Court need not decide this issue, however, because it finds that Benson has not established a prima facie case

of racial discrimination to establish that a constitutional violation occurred, let alone that any such violation derived from a policy or custom of the City.

A section 1983 claim asserting that an employee's termination violated the Fourteenth Amendment's Equal Protection Clause is evaluated under the same standards as a Title VII claim. *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007) (explaining that in employment discrimination cases "[s]ection 1983 and title VII are 'parallel causes of action'" (quoting *Cervantez v. Bexar Cnty. Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996))). "Because direct evidence [of discrimination] is rare," the *McDonnell Douglas* burden-shifting framework, under which courts analyze circumstantial evidence of discrimination, typically determines whether such claims survive summary judgment. *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994). Under *McDonnell Douglas*, the plaintiff first has the burden to establish a prima facie case of discrimination. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the allegedly discriminatory action. *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If a defendant advances such a justification, then the burden shifts back to the plaintiff to demonstrate that the proffered reason is not the true

reason for the action, but rather is a pretext for discrimination. *Reeves*, 530 U.S. at 143 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish a prima facie case, Plaintiff must show that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) . . . that other similarly situated employees [who are not members of the protected class] were treated more favorably." *Bryan*, 375 F.3d at 360 (citing *Okoye v. Univ. of Tex. Hous. Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)). Texas City does not dispute the first three elements: Benson is African-American, was qualified for his job, and was subject to an adverse employment action—his termination. But it does contest whether Benson has produced sufficient evidence to show that similarly situated individuals were treated more favorably.

Recent Fifth Circuit opinions expound on the requirement that "an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). The Fifth Circuit has warned, however, that "nearly identical" is not "synonymous with 'identical.'" *Id*. A "requirement of complete or total identity rather than near identity would be essentially insurmountable . . . ." *Id.* A number of factors help determine whether

a proposed comparator's actions are similar enough:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Id.* (internal quotation marks and citations omitted).

Benson must therefore produce evidence that would allow the finder of fact to conclude that he and at least one of his proposed comparators shared the same or similar (i) job or responsibilities; (ii) supervisor or person determining their employment status; (iii) violation history; and (iv) conduct. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012) (citing *Lee*, 574 F.3d at 260). Of these factors, the most important is the similarity of the comparator's conduct to that which led to the plaintiff's termination. *Id.* "If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated." *Lee*, 574 F.3d at 260 (emphasis in original) (quoting *Wallace v. Methodist Hosp. Sys., Inc.*, 271 F.3d 212, 221–22 (5th Cir. 2001)). The conduct must be comparable not only in terms of how serious the offenses were; the wrongful acts themselves must be "nearly identical" to each other. *See Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213, 215 (5th

Cir. 2004) (vacating a verdict finding discrimination where the jury was instructed that "comparably serious misconduct was by itself enough to make employees similarly situated"); *Lee*, 574 F.3d at 260 n.23 (citing unpublished cases showing that even minor differences in conduct are enough to make employees dissimilarly situated).

None of Benson's proffered comparators are similarly situated. Benson primarily relies on the cases of Roger Bradley and Tommy Ray Maris, two white Texas City employees also accused of theft. Bradley had worked since 1995 as a fleet superintendent for the City. Maris has worked for the City since 1989 and currently works as a street superintendent. Michael Cox supervised both men. Bradley gave Maris a set of four tires belonging to the City, which had formerly been on City police cars, because Bradley believed that these tires were "old junk." Docket Entry No. 38-13 at 7. When questioned regarding the tires, Bradley "readily admitted" giving them to Maris, and when informed that he did not have the authority to dispose of the City's property in this manner, he conceded that he "made a bad call in judgment." Docket Entry No. 31-21 at 20, 25. Bradley had no prior history of discipline during his tenure with the City. As a result of this incident, Mayor Doyle decided to terminate Bradley, but because Bradley met the qualifications for retirement, he opted to retire rather than face discipline for his actions. Like Bradley, Maris also "readily admitted" to his role in the event and

had no prior history of discipline. Docket Entry No. 31-5 at 6. Upon learning that his possession of the tires was unauthorized, he immediately returned them. Mayor Doyle suspended Maris without pay for five days.

Although the termination decisions regarding Benson, Bradley, and Maris were all made by Mayor Doyle, and all three were accused of misappropriating city property, that is where the similarities end. Benson did not have the same job or responsibilities as Bradley or Maris. Whereas Bradley and Maris had no previous history of discipline at work, Benson's previous disciplinary history was extensive, including at least six prior disciplinary actions between 2000 and 2007, from a verbal warning for failure to follow City policy regarding public conduct to a two-week suspension for not being truthful regarding his knowledge about a "sprayed paint on dog incident." Docket Entry No. 31-5 at 5, 19; *see also Lee*, 574 at 261 ("Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable."). Finally, while both Bradley and Maris immediately admitted their mistakes and returned the property willingly, Benson did not show similar signs of remorse. *See, e.g.*, *Pankey v. Phila. Hous. Dev. Corp.*, No. 09-3943, 2011 WL 1161918, at *5 (E.D. Pa. Mar. 29, 2011) ("A plaintiff's choice not to apologize can defeat a claim that she is similarly situated to another employee who made a different choice." (citations omitted)).

Michael Stump also was not similarly situated to Benson. Stump has been the solid waste manager for the City for over ten years. He was not accused of a theft offense, but rather of using a racial slur to refer to himself for which he received a written and oral reprimand. Benson contends that Stump's conduct was more reprehensible than his alleged misappropriation of a port-o-potty and demonstrates Texas City's lax attitude towards racism. But regardless of one's assessment about the comparative immorality of their conduct, Stump's misconduct was of a different nature than Benson's. Moreover, Stump worked in a different department and had different responsibilities. And like Bradley and Maris, Stump had no prior history of violations and apologized and expressed remorse when confronted about his misconduct. Given these differences, Stump's misconduct does not help Benson meet the similarly situated element. *See Bryan*, 375 F.3d at 360.

Benson also offers an affidavit of a former Hispanic Texas City police officer who was suspended and later terminated as a result of being charged with illegal dumping. Docket Entry No. 38-20. The officer alleges that two white police officers faced less serious consequences after committing acts such as having pornography on a work computer and having sex in a patrol car. *Id.* These individuals are not similarly situated to Benson. Police work is vastly different from working in the City's utilities department, the police chief rather than the

mayor made those disciplinary rulings, the officers' misconduct did not involve theft, and there is no evidence about those officers' disciplinary history.

Having failed to present a comparator who even comes close to the similarly situated line, Benson cannot state a prima facie case of discrimination. Summary judgment is therefore proper.

### IV.   CONCLUSION

Benson warns against "too rigid" an application of the similarly situated requirement. Indeed, this Court has recognized that flexibility is warranted in this inquiry when all of the factors may not fit a particular workplace. *See Gaalla v. Citizens Med. Ctr.*, No. 6-10-14, 2013 WL 66250, at *4 (S.D. Tex. Jan. 2, 2013) (relaxing the "similarly situated" analysis for plaintiffs working in a specialized field in a small city where there were few available similarly situated individuals). But this is a case in which Benson worked for a public employer with a sizeable workforce from which to identify similarly situated employees. His inability to do so means there is no evidence from which a jury could infer that Texas City fired him because of his race. For these reasons, the City's Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED**.

**SIGNED** this 25th day of February, 2013.

_____
Gregg Costa
United States District Judge